```
                 UNITED STATES DISTRICT COURT
                  DISTRICT OF NEW HAMPSHIRE
```

Expedition Leather LLC

    v.                                              Civil No. 11-cv-588-JL
                                                       Opinion No. 2013 DNH 005

FC Organizational Products LLC

**MEMORANDUM ORDER**

Like an examination in a law school Contracts class, this case involves a classic dispute under the Uniform Commercial Code over the sale of goods. Plaintiff Expedition Leather LLC filed this action against defendant FC Organizational Products LLC ("FCOP") in this court, alleging that FCOP had refused to pay for goods it had ordered and received from Expedition. FCOP moved to dismiss, see Fed. R. Civ. P. 12(b)(6), arguing that Expedition had agreed, by way of a forum selection clause, to litigate any disputes related to FCOP's orders in a Utah state or federal court. This court, perceiving factual disputes as to whether the parties had agreed to the forum selection clause, denied FCOP's motion. See Order of June 21, 2012; Order of July 3, 2012. Because, however, applicability of the forum selection clause is a threshold issue affecting whether this action belongs in this district, the parties agreed to a process by which this court would resolve those disputes expeditiously.

After conducting limited discovery pursuant to that agreement, the parties independently resolved most of their factual disputes.  They continue to disagree, however, whether the forum selection clause applies to Expedition's claims in this action.  That disagreement largely concerns what inferences may be drawn from the undisputed facts--specifically, whether the court can infer Expedition's agreement to be bound by the forum selection clause from those facts.  The parties have each submitted memoranda of law, and have jointly submitted a statement of undisputed facts and a timeline of events.  They have also requested that the court resolve the remaining legal and factual issues in this case without holding an evidentiary hearing or oral argument.

The court has jurisdiction under 28 U.S.C. § 1332(a)(1) (diversity).  After careful consideration of the materials before it, the court finds that Expedition did not agree to the forum selection clause until August 20, 2010.  As a result, the court will not dismiss this action insofar as Expedition's claims arise from purchase orders FCOP issued prior to that date.  One of FCOP's orders was issued after that date, however, and FCOP has demonstrated that the forum selection clause applies to claims arising from that order.  Such claims must be litigated in Utah, and accordingly are dismissed.

I.  **Applicable legal standard**

Where the applicability of a forum selection clause turns on disputed factual issues, "the district court may weigh evidence, assess credibility, and make findings of fact that are dispositive." Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1139-40 (9th Cir. 2004); see also New Moon Shipping Co., Ltd. v. MAN B&W Diesel AG, 121 F.3d 24, 29 (2d Cir. 1997) (similar). "Before a court considers whether to enforce a forum selection clause, it must decide a few threshold matters, such as whether (1) the parties entered into a valid contract of which the forum selection clause was an agreed-to provision, (2) the clause is mandatory and (3) the clause governs the claims asserted in the lawsuit." Provanzano v. Parker View Farm, Inc., 827 F. Supp. 2d 53, 58 (D. Mass. 2011); see also Altvater Gessler-J.A. Baczewski Int'l (USA) Inc. v. Sobieski Destylarnia S.A., 572 F.3d 86, 89 (2d Cir. 2009) (similar).  The party seeking enforcement of the clause bears the burden of establishing these elements by a preponderance of the evidence.  Altvater, 572 F.3d at 89; AIG Mexico Seguros Interamericana, S.A. de C.V. v. M/V Zapoteca, 844 F. Supp. 2d 440, 442 (S.D.N.Y. 2012).

**II.   Background**[1]

FCOP sells consumer goods, including the Franklin Planner and other organizational tools.  During the time period at issue in this case, Expedition supplied various custom leather products, such as planner covers and binders, to FCOP.

Before serving as a supplier to FCOP, Expedition had supplied similar leather products to the Consumer Solutions Business Unit of Franklin Covey Co.  At the time, Franklin itself sold consumer goods similar to those now sold by FCOP, including the Franklin Planner.  To order products from Expedition, Franklin would submit individual written purchase orders to Expedition.

On March 11, 2008, Franklin sent Expedition an e-mail titled "Update to [Purchase Order] Terms & Conditions."  The e-mail informed Expedition that "the attached [Purchase Order] Terms & Conditions has *[sic]* been changed effective immediately."[2]  The attachment, titled "Standard Terms and Conditions," stated that

---

[1]This section briefly recounts the key facts.  The court otherwise incorporates the parties' amended joint statement of undisputed facts (document no. 25) by reference.

[2]Based upon the evidence before this court, it appears that Franklin had mentioned its terms and conditions to Expedition only once before, in a January 2008 e-mail.  Although that e-mail purported to attach Franklin's "[Purchase Order] Terms & Conditions, Receiving Standards, & Routing Guide," the parties have not submitted any attachment to this court, so the court can draw no conclusion as to its contents.

4

"[a]ll deliveries of goods and/or the rendering of services by Seller to Purchaser shall be delivered, rendered, and accepted solely upon price, terms, conditions, and shall conform to specifications, set forth in this document."  And, as is relevant here, it provided that "[t]his purchase order shall be governed by and construed in accordance with the laws and decisions of the jurisdiction in the State of Utah, and Seller consents, exclusively, to the adjudication of any dispute arising out of this Agreement by any federal or state court of competent jurisdiction sitting in said jurisdiction."  There is no evidence before the court that Expedition responded in any way to this e-mail, or otherwise discussed the attached terms and conditions with Franklin.

A little over two months after sending the March 2008 e-mail, Franklin entered into a Master Asset Purchase Agreement with FCOP, wherein Franklin agreed to sell its Consumer Solutions Business Unit to FCOP.  Although the purchase agreement included a schedule of contracts FCOP would acquire in the transaction, neither the Standard Terms & Conditions nor any contract with Expedition was listed on that schedule.

The day after Franklin and FCOP entered the purchase agreement, Franklin sent Expedition an e-mail informing it of the sale.  Franklin's e-mail did not state that the terms and

5

conditions previously sent would also govern purchase orders issued by FCOP, and at no point afterward did Franklin communicate this to Expedition.  Two months later, FCOP sent Expedition an e-mail informing it that the transition of the Consumer Solutions Business Unit had formally occurred "and a new [Purchase Order] system was implemented."  That e-mail also informed Expedition that FCOP would take over the open purchase orders placed by Franklin, which would be "re-entered into this new system" and given new purchase order numbers.

Expedition and FCOP did not have an independent written contract for the supply of Expedition's leather products.  Rather, FCOP--like Franklin before it--would submit individual written purchase orders to Expedition, and Expedition would accept each of the purchase orders verbally or in writing within a few days of receipt.  In April 2009, FCOP informed Expedition that it had decided to consolidate the number of its current suppliers and that Expedition "was one of two suppliers selected to continue to support [FCOP's] business."  FCOP's letter sketched broad terms of what it expected to be a three-year relationship between the parties, but made no reference to any terms and conditions.

Over the next fifteen months, FCOP submitted no less than twelve purchase orders, all of which are at issue in this case,

to Expedition.  None of the purchase orders expressly referred to the "Standard Terms and Conditions" Franklin had sent to Expedition in March 2008, nor did they refer to any other terms extraneous to the orders themselves.

During an August 2010 telephone conference between the parties, FCOP's CEO stated that Expedition's sales to FCOP were subject to FCOP's standard purchase order terms and conditions.  Expedition replied that it was not aware of the existence of such terms and conditions.  Neither party has any evidence that, prior to this telephone conference, FCOP and Expedition had any correspondence or communication regarding the terms and conditions applicable to FCOP's purchase orders.

The day after the telephone conference, FCOP sent Expedition an e-mail attaching its "Standard Terms and Conditions."  The attached terms and conditions were not identical in all respects to those that Franklin sent to Expedition in March 2008, though the forum selection and choice-of-law clauses in both sets of terms and conditions were.  Not long thereafter, on August 20, 2010, FCOP sent Expedition another e-mail attaching a new set of "Standard Terms and Conditions" that differed substantially from both those that Franklin sent to Expedition in 2008 and those that FCOP had sent to Expedition earlier that month.  Again, however, the forum selection and choice-of-law clauses in the new

7

terms and conditions were identical to those in the earlier terms and conditions.  The parties agree that this final set of terms and conditions applied to the purchase orders FCOP issued after August 20, 2010--including one purchase order, dated September 22, 2010, that is at issue in this case.

### III. Analysis

As already mentioned, in order for FCOP to obtain dismissal of this action based upon a forum selection clause, it has the burden of demonstrating that: "(1) the parties entered into a valid contract of which the forum selection clause was an agreed-to provision, (2) the clause is mandatory and (3) the clause governs the claims asserted in the lawsuit."  Provanzano, 827 F. Supp. 2d at 58; see also Altvater, 572 F.3d at 89.  Here, the issue before this court concerns only the first element:  whether the terms and conditions that Franklin sent to Expedition in March 2008 were "agreed-to provisions" of any contract between Expedition and FCOP at any time before August 20, 2010, when the parties agreed to a different set of terms and conditions.  There is no dispute that if the terms and conditions were agreed to, the forum selection clause therein is enforceable and mandatory, and requires litigation of Expedition's claims in Utah.

FCOP argues that the course of dealing between the parties establishes Expedition's agreement to the terms.  For its part,

Expedition argues that no agreement can be reasonably inferred from its receipt of a single communication from Franklin about the terms, especially where the terms are not referenced in any of the disputed purchase orders and FCOP never took any steps to communicate an intent that the terms would apply to its purchase orders following its acquisition of Franklin's business. Expedition has the better argument, and the court therefore declines to dismiss this action.

In support of its position, FCOP relies on § 2-202 of the Uniform Commercial Code.[3]  That section provides that the terms of a writing reflecting the agreement between parties "may be explained or supplemented (a) by course of performance, course of dealing, or usage of trade . . . ; and (b) by evidence of consistent additional terms . . . ."  U.C.C. § 2-202.  FCOP characterizes Expedition's prior dealings with Franklin as part of the "course of dealing" between the parties that should be

---

[3]Both New Hampshire and Utah have adopted the Uniform Commercial Code.  See N.H. Rev. Stat. Ann. ch. 382-A; Utah Code Ann. tit. 70A.  FCOP and Expedition appear to agree that the provisions of the U.C.C. (and, more specifically, Article 2 of the U.C.C.) and state contract law govern this dispute, and that, given the identical or near-identical doctrines in both states, the result should be the same no matter which state's law is applied.  The court therefore does not undertake an extensive choice-of-law analysis here.  See Lambert v. Kysar, 983 F.2d 1110, 1114 (1st Cir. 1993) (declining to resolve choice of law issue "as the outcome is the same under the substantive law of either jurisdiction").  Thus, citations are to the U.C.C. itself, rather than to either state's version of it.

considered when determining the contours of the parties' agreement.  By fulfilling Franklin's purchase orders after receiving the terms in March 2008, FCOP says, Expedition agreed to the terms.  And, by "continu[ing] to fulfill new purchase orders issued by FCOP . . . without receiving a new set of standard terms and conditions applicable to purchase orders, and without otherwise inquiring about any standard terms and conditions that would apply to purchase orders issued by FCOP," it continues, Expedition agreed that those terms would continue to govern FCOP's purchase orders.  Memo. in Supp. of Application of Forum Selection Cl. ("Memo. in Supp.", document no. 26) at 7.

There are a host of difficulties with FCOP's argument.  The most basic, however, is that there is no evidence before the court that Expedition, through its words or conduct, agreed that the March 2008 terms and conditions would apply to its sales contracts with Franklin–-let alone its contracts with FCOP. Under the common law of both New Hampshire and Utah, for a party to be bound by a contractual term, it must in some way manifest an intention to be bound by that term.  See Fleet Bank NH v. Christy's Table, Inc., 141 N.H. 285, 287-88 (1996); Cal Wadsworth Constr. v. City of St. George, 898 P.2d 1372, 1376 (Utah 1995). To the extent it displaces the common law, the U.C.C. similarly requires "[a] definite and seasonable expression of acceptance"

for a contract to be formed, U.C.C. § 2-207(1), though that expression "may be made in any manner sufficient to show agreement," id. § 2-204(1), i.e., "in any manner and by any medium reasonable in the circumstances," id. § 2-206(1)(a). All that FCOP has shown, however, is that Franklin sent a single, unilateral communication attaching the terms and conditions to someone at Expedition. That communication, and its attachment, were then unanswered, unacknowledged, and unmentioned for the (brief) remainder of Franklin's and Expedition's relationship.

While the court can envision hypothetical scenarios in which a party's silence in the face of such a communication might conceivably indicate acceptance--if, for example, the parties' previous course of dealing had established that silence could be so construed--there is simply no evidence in this case enabling the court to interpret Expedition's silence as its implicit acceptance of the terms and conditions. (Indeed, FCOP has not identified to whom at Expedition Franklin's March 2008 e-mail was sent, whether that person had the authority to bind Expedition to a contract with Franklin, or what previous dealings that person-- or, for that matter, Expedition itself--had with Franklin up to that point.) To the extent FCOP argues that Expedition signaled its assent to the terms by fulfilling Franklin's post-March 2008 purchase orders, the court also cannot draw that conclusion from

11

the evidence.  It is true that a party may sometimes signify acceptance by commencing performance of the tasks indicated in the offer.  See Tsiatsios v. Tsiatsios, 140 N.H. 173, 178 (1995); Commercial Union Assocs. v. Clayton, 863 P.2d 29, 34 (Utah App. 1993); see generally U.C.C. § 2-206.  But in shipping goods to Franklin after March 2008, Expedition was not performing any task indicated in the March 2008 e-mail or the attached terms and conditions.  It was responding to the separately-issued purchase orders sent by Franklin––which did not themselves contain or refer to the previously-transmitted terms.  Cf. Foss Mfg. Co., LLC v. S Grp. Auto., LLC, 2009 DNH 037, at 11-12 n.6 (expressing skepticism about substantially similar argument).

The absence of evidence that the March 2008 terms and conditions were agreed-to provisions of Expedition's and Franklin's commercial relationship is a yawning chasm in the basic premise of FCOP's argument that it essentially "inherited" those provisions from Franklin.  Based on this record, the court concludes that forum selection clause does not apply to any purchase orders FCOP issued to Expedition prior to August 20, 2010.  Insofar as Expedition's claims are premised on those purchase orders, they are not dismissed.[4]

---

[4] Even if the court were to find that Expedition agreed that the terms would govern its provision of goods to Franklin, it would have great difficulty concluding that Expedition agreed to

The parties agree, however, that the "Standard Terms and Conditions" that FCOP sent to Expedition on August 20, 2010, apply to purchase orders issued after that date. Those terms, like Franklin's March 2008 terms, include a forum selection clause providing that Expedition "consents, exclusively, to the adjudication of any dispute . . . by any federal or state court of competent jurisdiction sitting in [the State of Utah]." And, as already noted, one of the purchase orders at issue in this case was issued after August 20, 2010. FCOP has expressly argued in its opening memorandum that the forum selection clause in the August 2010 terms applies to that order. Expedition however, has advanced no counter-argument, and the court perceives no reason

---

extend those terms to its relationship with FCOP.  As discussed in Part II, <u>supra</u>, after the Consumer Solutions Business Unit formally transitioned from Franklin's ownership to FCOP's, FCOP informed Expedition via e-mail that it was instituting a new purchase order system.  Contrary to FCOP's representation in its memorandum, that e-mail did not "inform Expedition that . . . none of the terms and conditions applicable to [the] purchase orders had changed."  Memo. in Supp. at 6.  Neither that e-mail, nor any other e-mail to Expedition regarding the sale to FCOP, made any reference whatsoever to any terms and conditions.  Nor did any of the purchase orders at issue in this case refer to, or purport to incorporate, the terms and conditions.  Given that the terms and conditions, on their face, expressly refer to Franklin at least twice, <u>see</u> Exh. F (document no. 25-6) at 2 ¶¶ 3, 18, the court is at a loss to see how Expedition was even on reasonable notice of FCOP's position that the terms applied to its orders-- let alone accepted that position.  Under these circumstances, the court cannot accept FCOP's argument that Expedition bore the onus of "inquiring about any standard terms and conditions that would apply to purchase orders issued by FCOP."  Memo. in Supp. at 7.

that clause would not require dismissal of Expedition's claims insofar as they arise from FCOP's alleged nonpayment for that order. Accordingly, those claims are dismissed.

## IV. Conclusion

Based on the foregoing, the court rules that the forum selection clause only applies to purchase orders postdating August 20, 2010. Because the majority of the purchase orders at issue in this case predate that date, the court will not dismiss this case in its entirety. Any claims related to post-August 20, 2010 purchase orders, however, are subject to the forum selection clause and are dismissed for improper venue.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: January 15, 2013

cc: Philip H. Graeter, Esq.
    Jesse I. Redlener, Esq.
    Jennifer Turco Beaudet, Esq.